## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KAMIL T. BROWN,

      Plaintiff,

      v.

CAISON,

      Defendant.

CIVIL ACTION NO. 1:24-cv-00445

(SAPORITO, J.)

## ORDER

Kamil T. Brown, formerly incarcerated at SCI-Camp Hill, proceeds on retaliation and excessive force claims against Samuel Caison, a correctional officer at the prison. Caison has moved for summary judgment (Doc. 24), and Brown has not responded despite multiple extensions of the deadline to do so. Because Brown has not properly exhausted administrative remedies as to his claims for money damages, and the record forecloses any reasonable inference that Caison violated his constitutional rights, the Court grants summary judgment to Caison.

## I. BACKGROUND

The Court received Brown's verified complaint against four defendants affiliated with SCI-Camp Hill on May 7, 2024. (Doc. 1). As relevant here, the complaint alleges that Caison engaged in a campaign

of abuse and harassment against Brown in retaliation for Brown submitting prison grievances and other complaints against Caison. The complaint requests "pun[i]tive and compensatory damages to be determined by a jury," and no other relief. *See* (Doc. 1 at 5). Following a motion to dismiss, Brown was permitted to proceed on two claims against Caison: an Eighth Amendment excessive force claim based on a June 14, 2022, incident in which Caison allegedly "grabb[ed Brown] around the neck," and a First Amendment retaliation claim based on Caison's purportedly illegitimate search of Brown's cell on September 30, 2022. *See* (Doc. 12).

Caison moved for summary judgment on July 11, 2025, and his brief in support was filed on September 23, 2025. Brown failed to respond to the motion within the time allotted, and the Court issued two orders extending the deadline and warning that the motion would be deemed unopposed if Brown did not respond. (Docs. 33, 35). The Court then granted a final, limited extension to February 19, 2026, after Brown filed a motion claiming he was unable to meet the last deadline due to unspecified "personal reasons." *See* (Docs. 36, 37). Brown has not responded to the motion, and the time to do so has passed.

## II.    LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to

the jury." *Anderson*, 477 U.S. at 251-52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Because Brown has not responded to the motion, Caison's properly supported statements of fact are deemed unopposed. *See* M.D. Pa. L.R. 56-1. Regardless, the Court must review the record to establish "that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990).

## III.   MATERIAL FACTS

The summary judgment record describes three incidents at SCI-Camp Hill involving Brown and Caison, and documents the prison grievances Brown pursued after each incident. The Pennsylvania Department of Corrections ("DOC") provides a three-part procedure for grievances: initial review by a Grievance Officer, appeal to the Facility Manager, and final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). To begin the grievance process, the prisoner must provide a factual summary of the claim and state the relief requested. *See* DC-ADM 804 ("Inmate Grievance System"), § 1.A.[1] As relevant here, "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." *Id.*, § 1.A.11.d.

In the first incident, on June 14, 2022, Caison issued a misconduct report against Brown for "Presence in [an] Unauthorized Area." In brief, the report alleged that Caison witnessed Brown on the "B side" of the

---

[1] Although not included among the summary judgment papers, the Court takes judicial notice of the current version of DC-ADM 804, a publicly available policy that has been in effect since May 1, 2015. *See, e.g.*, *Williamson v. Rivello*, No. 1:23-CV-1781, 2026 WL 286179, at *2 n.2 (M.D. Pa. Feb. 3, 2026).

prison, in an area where he was not permitted. Caison repeatedly ordered Brown to return to the "A side" where he was housed. Brown "became irate" before ultimately complying "at his leisure." During this dispute, Brown threatened to file a falsified grievance against Caison. The misconduct report was referred to "informal resolution," meaning that Brown suffered no loss of privileges. *See* (Doc. 31-1).

On the same date, Brown filed a grievance that told his own version of this incident, in which he accused Caison of "grabb[ing Brown] by [the] neck," drafting a falsified report, and using "[intimidation] tactics to silence [Brown] from writing this grievance." The grievance did not clearly state the relief requested, but Brown wrote that he "would like to press charge[s]" against Caison. *See* (Doc. 31-3 at 5).

Six days later, on June 20, Brown attended a sick call in which he told a physician assistant that he "had an altercation on 6/14/22 and desires something for neck stiffness and pain." He did not otherwise describe the injury and had no apparent limitation to his range of motion, but "want[ed] it documented that he has neck pain." The provider initially recommended Motrin, but it is unclear if this was ever prescribed, because he was already taking Naproxen for an unrelated

- 6 -

issue. *See* (Doc. 31-4). On June 23, Brown had a "mental health contact" in which he told a provider that he had "a verbal altercation with a Sgt. and [was] worried about how that [would] play out." *See* (Doc. 31-5). Ultimately, DOC investigators found that Brown's allegations of physical abuse were "unsubstantiated," because there were no witnesses and no video footage of the incident. *See* (Docs. 31-2, 31-3).

On August 29, 2022, Brown was involved in another dispute with Caison. In a grievance, Brown claimed that Caison had "refused to let [him] out on time" for a scheduled telephone call at 6:10 p.m. Brown claimed that Caison did not let him out until 6:20 p.m., which in turn "cause[d Brown] to lose out on 6:30 p.m. yard time." The grievance officer reviewed camera footage and found that Brown had been released to use the phone at 6:12 p.m., and used the phone from 6:13 p.m. to 6:36 p.m., in excess of his allotted 15 minutes, and thus Caison was not responsible for Brown missing yard time. *See* (Doc. 31-6).

Finally, Brown filed a grievance in which he alleged that Caison conducted an improper search of his cell on September 30, 2022. Brown alleged that Caison "took it upon himself to conduct a full[-]fledge[d] security investigative search" without Brown present. Brown allegedly

- 7 -

returned to his cell and found it "ransack[ed]" and in "disarray," with various items strewn about the floor, and with "one brown t-shirt [and] a car magazine" missing. As relief, he requested Caison's "removal from any [and] all further interaction with general population." Upon review of surveillance video, the grievance officer found that Caison had removed "an extra mattress and a large amount of excessive linens," which did not require a confiscation slip because they were state property, and that "[n]o evidence exists"[2] to corroborate Brown's allegations that his cell was left in disarray. *See* (Doc. 31-7 at 6-7).

## IV. DISCUSSION

Caison is entitled to summary judgment because Brown did not properly exhaust administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), prisoners[3] complaining about the conditions of their confinement must exhaust available administrative remedies

---

[2] In appealing the denial of this grievance, Brown claimed to have "witnesses that saw [Caison] leave the cell in disarray," but did not identify the witnesses. *See* (Doc. 31-7 at 5).

[3] Although Brown has now been released from custody, these rules still apply to this case because he filed the operative complaint from prison. *See Garrett v. Wexford Health*, 938 F.3d 69, 88 (3d Cir. 2019).

before they may file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Because the DOC's rules require that "the inmate must request the specific relief sought in his/her initial grievance," a prisoner who has not requested money damages during the grievance process cannot seek money damages in federal court. *See, e.g., Wright v. Sauers*, 729 F. App'x 225, 227 (3d Cir. 2018); *Mills v. Rogers*, No. 1:20-CV-00266, 2024 WL 3034099, at *17-18 (M.D. Pa. June 17, 2024) (addressing claims for compensatory and punitive damages); *Cramer v. Bohinski*, No. 1:22-CV-583, 2024 WL 1557377, at *3 (M.D. Pa. Apr. 10, 2024).

Here, the undisputed evidence shows that Brown did not request monetary relief in his grievances about the June 14 altercation with Caison or the September 30 cell search.[4] Because he only seeks

---

[4] Brown also did not make any such request in his grievance appeals. *See* (Docs. 31-3, 31-7); *cf. Bailey v. Yoder*, No. 20-CV-01836, 2023 WL 7329526, at *3 (M.D. Pa. Nov. 7, 2023) (finding that plaintiff's claim for money damages was exhausted when he sought money damages in his grievance appeal and the request was considered on its merits).

compensatory and punitive damages in this case, and he has not exhausted those claims for money damages in accordance with the DOC's rules, the Court must grant summary judgment to Caison. *See Mills*, 2024 WL 3034099, at \*17-18.

Moreover, Brown has not presented evidence that could have sustained his claims on their merits. Even assuming a genuine dispute of fact as to whether Caison "grabbed" Brown's neck or throat, this alone would not defeat summary judgment on his excessive force claim; he would have to show that the officer used more than *de minimis* force. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (not every "malevolent touch by a prison guard" violates the Eighth Amendment); *Fears v. Beard*, 532 F. App'x 78, 82 (3d Cir. 2013) (summary judgment appropriate where officer used *de minimis* force, despite plaintiff's allegations of pain). The record shows that Caison would have been justified in using some force, given that Brown was in an unauthorized area of the prison and disobeyed verbal orders to leave. *See Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (force applied "in a good-faith effort to maintain or restore discipline" does not violate the Eighth Amendment).

Brown's retaliation claim would also fail on its merits. He alleges

- 10 -

that the September 30 cell search was "in retaliation for" his August 29 grievance about the denial of yard time. However, he has not disputed the evidence that this was a frivolous grievance based on allegations he knew to be false, which is not protected conduct that can sustain a retaliation claim. *See McKee v. Rowe*, No. 4:23-CV-00015, 2024 WL 265867, at *3 n. 43 (M.D. Pa. Jan. 24, 2024) (citing *United States v. Gonzalez*, 905 F.3d 165, 191-92 (3d Cir. 2018) (the First Amendment does not protect "false statements of fact")). Nor could a jury reasonably find a "pattern of antagonism" by Caison supporting an inference of retaliation for prior grievances. To the contrary, the record shows that Brown's repeated allegations of abuse by Caison were investigated and consistently found to be unsupported or contradicted by video, written records, and/or interviews with staff. *See also* (Doc. 1-1 (documenting responses to seven grievances Brown filed against Caison)).

## V.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED THAT**:

1.    Defendant's motion for summary judgment (Doc. 24) is **GRANTED**. The Clerk is directed to enter **JUDGMENT** in favor of the defendant and against the plaintiff.

2.    The Clerk is directed to mark this case as **CLOSED**.


Dated: March 12, 2026                    *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         United States District Judge